Aaron Joshua appeals his conviction for possession of greater than 100 grams of crack cocaine, a violation of R.C. 2925.11, a felony of the first degree. Joshua contends that the Ross County Court of Common Pleas erred by denying his motion to suppress. We disagree, because the Ohio State Highway Patrol did not detain Joshua for an unreasonable period of time while investigating its reasonable suspicion that Joshua was engaged in illegal activity. Joshua also asserts that the trial court erred by finding him guilty based upon his no contest plea, despite the prosecutor's failure to make a statement. We disagree, because the trial court properly based its finding upon the unchallenged allegations in the indictment. Joshua next asserts that he was denied effective assistance of counsel, because he pled no contest. We disagree, because entering a no contest plea was a sound strategy under the circumstances. Finally, Joshua asserts that the trial court erred by sentencing him for possession of crack cocaine, when the record contains no evidence that Joshua did not possess a less punishable form of cocaine. We disagree, because the indictment alleged that Joshua possessed crack cocaine. Accordingly, we affirm the judgment of the trial court.
 I.
At 11:07 a.m. on March 2, 1998, Ohio State Highway Patrol Trooper Hannon observed Joshua speeding on State Route 104 in Ross County, Ohio. Tpr. Hannon signaled Joshua to stop, and Joshua complied. Upon approaching Joshua's car, Tpr. Hannon noticed that Joshua and his passenger were acting nervous and suspicious. Joshua produced a valid driver's license, but did not possess the correct rental papers for the rental car he was driving. Tpr. Hannon's suspicion increased when Joshua described his route of travel between Columbus and Portsmouth, because Joshua described an illogical route.
At 11:10 a.m., Tpr. Hannon returned to his vehicle to check the vehicle's status and Joshua's driver and warrant status. The dispatcher informed Tpr. Hannon that police intelligence suspected Joshua of transporting illegal narcotics between Columbus and Portsmouth.
The dispatcher immediately contacted four area police canine units, and reached the first available unit at 11:25 a.m. Tpr. Mikesh, the canine handler in the unit, testified at the motion to suppress hearing that it took her twenty-four minutes to reach the scene due to traffic and travel time. Meanwhile, Tpr. Hannon noticed Joshua and his passenger making continuous furtive movements and acting extremely nervous. At 11:22 a.m., Tpr. Hannon learned from the car rental company that Joshua legitimately rented the car, but he decided to continue to detain Joshua until the canine unit arrived.
The canine unit arrived on the scene at 11:49 a.m. During the "dog sniff" test, the patrol canine alerted on the right seam of the vehicle's passenger door. When the officers patted down the passenger for weapons, they discovered a large quantity of crack cocaine concealed under her clothing. The officers arrested Joshua after the passenger stated that she was carrying the drugs for him.
The Ross County Grand Jury indicted Joshua for possessing more than 100 grams of crack cocaine, a violation of R.C.2925.11, with a specification that Joshua is a major drug offender.
Joshua pled no contest and moved to suppress the evidence that flowed from the detention and search of his rental car. The trial court denied the motion. Joshua then offered a counseled, written plea of no contest. The court engaged in a dialogue with Joshua concerning his rights and the impact of the plea. Joshua indicated that he was satisfied with his counsel and agreed to knowingly, intelligently, and voluntarily waive his rights. The prosecutor chose not to make a statement. The court then found Joshua guilty and sentenced him to ten years in prison.
Joshua, represented by new counsel, now appeals and asserts the following assignments of error:
 I. THE TRIAL COURT ERRS IN OVERRULING A MOTION TO SUPPRESS EVIDENCE * * * WHERE * * * THERE WAS AN UNREASONABLE DELAY BETWEEN THE DIFFUSING OF THE REASONABLE GROUNDS AND THE IMPLEMENTATION OF A DOG SNIFF SEARCH WHICH ALLEGEDLY LEADS TO PROBABLE CAUSE TO SEARCH OR TO SEEK A WARRANT.
 II. A TRIAL COURT ERRS IN FINDING GUILT PURSUANT TO A NO CONTEST PLEA WHEN THE DEFENDANT IS ADVISED THAT HIS GUILT WILL BE DECIDED "BASED ON * * * THE INDICTMENT AND UPON THE STATEMENT BY THE PROSECUTOR ABOUT THE EVIDENCE WHICH WOULD HAVE BEEN PRESENTED AT TRIAL" WHEN THE PROSECUTOR THEN MAKES NO STATEMENT WHATSOEVER.
 III. IT IS PREJUDICIAL INEFFECTIVE ASSISTANCE OF COUNSEL TO PLEAD A CRIMINAL CLIENT NO CONTEST TO A MANDATORY TEN YEAR SENTENCE FOR POSSESSION OF CRACK COCAINE [UNDER THE CIRCUMSTANCES PRESENT IN THIS CASE].
 IV. IN A COCAINE POSSESSION CASE, THE COURT COMMITS PREJUDICIAL ERROR TO SENTENCE A PERPETRATOR PURSUANT TO THE MORE PUNISHABLE CRACK SUBSECTION RATHER THAN THE ORDINARY AND LESSER INCLUDED COCAINE SUBSECTION WITHOUT EXPERT EVIDENCE THAT THE SUBSTANCE IS IN FACT CHEMICALLY CERTAIN TO BE CRACK * * *.
 II.
In his first assignment of error, Joshua claims that the trial court erred by denying his motion to suppress. Appellate review of a decision on a motion to suppress evidence presents mixed questions of law and fact. United States v. Martinez
(C.A. 11, 1992), 949 F.2d 1117, 1119. At a suppression hearing, the trial court assumes the role of trier of fact, and as such, is in the best position to resolve questions of fact and evaluate witness credibility. State v. Carter (1995), 72 Ohio St.3d 545,552. A reviewing court must accept a trial court's factual findings if they are supported by competent, credible evidence. State v. Guysinger (1993), 86 Ohio App.3d 592, 594. The reviewing court then applies the factual findings to the law regarding suppression of evidence. An appellate court reviews the trial court's application of the law de novo. Statev. Anderson (1995), 100 Ohio App.3d 688, 691.
Joshua contends that Tpr. Hannon illegally held him in violation of his Fourth Amendment rights by prolonging an investigative stop beyond the time necessary to effectuate the purpose of the stop, i.e., issuing a citation for speeding. Therefore, Joshua asserts that the trial court should have suppressed the evidence arising from his detainment, specifically, the crack cocaine and the statement of his passenger. The state contends that the police properly seized the evidence under exceptions to Fourth Amendment search and seizure restrictions.
The Fourth Amendment to the United States Constitution provides for "[t]he right of the people to be secure * * * against unreasonable searches and seizures * * *." It is a cardinal principle that searches and seizures conducted without a prior finding of probable cause by a judge or magistrate are per se unreasonable under the Fourth Amendment, subject to only a few specifically established and well-delineated exceptions.California v. Acevedo (1991), 500 U.S. 565; State v. Tincher
(1988), 47 Ohio App.3d 188. If evidence is obtained through actions which violate an accused's Fourth Amendment rights, exclusion of the evidence at trial is mandated. Mapp v. Ohio
(1961), 367 U.S. 643.
A police officer may stop a vehicle based on probable cause that a traffic violation has occurred, regardless of the severity of the suspected violation. Dayton v. Erickson (1996),76 Ohio St.3d 3. Such a stop is reasonable even if the officer had some ulterior motive for making the stop, such as a suspicion that the violator was engaging in more nefarious criminal activity. Id. at syllabus.
Pursuant to Terry v. Ohio, (1968), 392 U.S. 1, a police officer may briefly detain an individual in order to investigate suspicious behavior if the officer can point to specific, articulable facts which, taken together with rational inferences from those facts, reasonably warrant the detainment. An investigative stop must be temporary and last no longer than is necessary to effectuate the purpose of the stop. Florida v.Royer (1983) 460 U.S. 491. If, during the initial stop, the officer observes articulable facts which continue to give rise to a reasonable suspicion of criminal activity, the officer may further detain the individual and conduct a more thorough investigation. State v. Robinette (1997), 80 Ohio St.3d 234,241; State v. Eggleston (1996), 109 Ohio App.3d 217. However, the continued detention of a suspect must be accompanied by active investigative effort by law enforcement. State v.McFarland (1982), 4 Ohio App.3d 158, citing Sharpe v.United States (C.A. 4, 1981), 660 F.2d 967 (en banc).
In this case, Tpr. Hannon stopped Joshua for a traffic violation, speeding. Joshua does not contest the legality of the initial stop. However, Joshua contends that the length of the detention, approximately forty-two minutes, was unreasonable. The trial court found that Tpr. Hannon observed articulable facts during the initial stop which led him to suspect that Joshua was involved in some type of criminal activity. Specifically, Tpr. Hannon noticed that Joshua did not possess the proper paperwork for the rental car he was driving, that Joshua was using an illogical, indirect route to travel between Columbus and Portsmouth, and that Joshua and his passenger appeared nervous.
As Tpr. Hannon continued to investigate, he observed Joshua and his passenger making furtive movements and growing more nervous. Thus, he observed articulable facts which escalated his suspicion that Joshua was engaged in criminal behavior. Though Tpr. Hannon later received word that Joshua legally possessed the rental car, that knowledge did not negate the other facts fueling Tpr. Hannon's suspicions. Joshua's continued detention was accompanied by the dispatcher's active investigative effort to locate an available canine unit. The dispatcher located a unit just three minutes after Tpr. Hannon obtained the rental car verification, and the unit immediately mobilized and traveled to the scene. Tpr. Mikesh testified that she required twenty-four minutes to arrive due to traffic and travel distance. Thus, Joshua's detainment during that time was accompanied by Tpr. Mikesh's active efforts in furtherance of the investigation.
We find that the record contains competent, credible evidence supporting the trial court's factual findings outlined here. Moreover, we find that the trial court properly applied the law to these facts, and that the officers did not unreasonably or illegally detain Joshua. Therefore, we find that the trial court did not err by overruling Joshua's motion to suppress.
Accordingly, we overrule Joshua's first assignment of error.
 III.
In his second assignment of error, Joshua contends that the trial court erred by finding him guilty pursuant to his no contest plea because the prosecutor failed to make any statement into the record about the evidence which would have been presented at trial. Joshua concedes that, pursuant to Crim.R. 11, felony convictions may be entered upon felony no contest pleas without a statement by the prosecutor. However, Joshua contends that the prosecutor was obligated to make a statement into the record in this case, because the plea form he signed states that the court will decide his guilt based upon the facts in the indictment and upon a statement by the prosecutor. Joshua contends that the prosecutor's failure to make a statement rendered his plea involuntary, because he did not receive the benefit of hearing the prosecutor's statement.
A plea of no contest, by its very nature, concedes the facts contained in the indictment. Crim.R. 11, State v. Thorpe
(1983), 9 Ohio App.3d 1, 2. Thus, the prosecutor is not required to state or recite for the record those facts supporting a felony conviction when the defendant enters a no contest plea. State v. Kutz (1993), 87 Ohio App.3d 329, 337.
In this case, even if we agreed with Joshua that the prosecutor was required to make a statement, Joshua fails to demonstrate that he suffered any prejudice due to the prosecutor's failure to make a statement. Joshua does not contend that the prosecutor's statement would have varied from the facts contained in the indictment. By entering a plea of no contest, Joshua conceded the accuracy of the facts contained in the indictment. Moreover, those facts were sufficient to support Joshua's conviction. Therefore, Joshua was not prejudiced by the prosecutor's failure to make a statement.
Accordingly, we overrule Joshua's second assignment of error.
 IV.
In his third assignment of error, Joshua contends that his trial counsel was ineffective because he allowed Joshua to plead no contest to a crime carrying a mandatory ten-year prison term. Specifically, Joshua contends that his trial counsel should have gone to trial to impeach the state's star witness, his passenger and accomplice. Additionally, Joshua contends that his trial counsel should have required the state to produce an expert witness to testify that the substance found was crack cocaine. Finally, Joshua contends that his trial counsel was ineffective because he led Joshua to believe that the prosecutor would make a statement to the court.
In State v. Ballew (1996), 76 Ohio St.3d 244, 255, the Ohio Supreme Court set forth the standard for ineffective assistance claims:
 Reversal of a conviction or sentence based upon ineffective assistance requires (a) deficient performance, "errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment"; and (b) prejudice, "errors * * * so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland v. Washington
(1984), 466 U.S. 668, 687.
In assessing performance, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland at 689. Furthermore, "the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Id.
In this case, Joshua knowingly, intelligently and voluntarily chose to waive his right to a trial. He stated that he was satisfied with his counsel. The crime with which he was charged carried a minimum prison term of ten years, and a maximum term of twenty years. In exchange for his plea, the state agreed not to oppose the minimum mandatory sentence of ten years. The evidence the state possessed against Joshua was overwhelming.
Under these circumstances, we find that Joshua's trial counsel's performance fell within the wide range of reasonable professional assistance. Accordingly, we overrule Joshua's third assignment of error.
 V.
In his final assignment of error, Joshua asserts that the trial court erred by sentencing Joshua for possession of crack cocaine, rather than giving him a lesser sentence for possession of ordinary cocaine. Joshua asserts that we should require the state to produce expert testimony to determine whether the substance is crack cocaine or ordinary cocaine. Further, Joshua asserts that the trial court should automatically sentence any defendant convicted of possession to the lesser sentence for ordinary cocaine, unless the state produces expert testimony proving the substance is crack cocaine.
In this case, the indictment alleged that Joshua knowingly possessed more than one hundred grams of crack cocaine. Joshua pled no contest. Thus, Joshua conceded the accuracy of the facts contained in the indictment, including the fact that the substance found in his rental car was crack cocaine. Thus, all the evidence before the court indicated that Joshua possessed crack cocaine. The trial court found Joshua guilty of possessing crack cocaine. Therefore, we find that the trial court did not err by sentencing Joshua for possession of crack cocaine.
Accordingly, we overrule Joshua's final assignment of error.
 VI.
In conclusion, we find that the trial court did not err by overruling Joshua's motion to suppress. Additionally, we find that Joshua suffered no prejudice based upon the prosecutor's failure to make a statement to the court. We further find that Joshua's trial counsel provided him with effective assistance. Finally, we find that the trial court did not err by sentencing Joshua for the crime for which he was convicted. Accordingly, we affirm the judgment of the trial court.
JUDGMENT AFFIRMED.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and Appellee recover from Appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Ross County Common Pleas Court to carry this judgment into execution.
If a stay of execution of sentence and release upon bail has been previously granted by the trial court or this court, it is continued for a period of sixty days upon the bail previously posted. The purpose of said stay is to allow appellant to file with the Ohio Supreme Court an application for a stay during the pendency of proceedings in that court. The stay as herein continued will terminate in any event at the expiration of the sixty day period.
The stay shall terminate earlier if the appellant fails to file a notice of appeal with the Ohio Supreme Court in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Ohio Supreme Court. Additionally, if the Ohio Supreme Court dismisses the appeal prior to expiration of said sixty days, the stay will terminate as of the date of such dismissal.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Abele, J. and Evans, J.:
Concur in Judgment and Opinion.
For the Court
 BY: ___________________________ Roger L. Kline, Presiding Judge
 NOTICE TO COUNSEL Pursuant to Local Rule No. 14, this document constitutes afinal judgment entry and the time period for further appealcommences from the date of filing with the clerk.