OPINION
{¶ 1} This appeal is before us a second time. In the first appeal, Defendant-Appellant's counsel filed a brief pursuant toAnders v. California (1967), 386 U.S. 738, 87 S.Ct. 1396,18 L.Ed.2d 493, stating that no meritorious issue for appellate review could be identified. However, in performing our independent review of the record pursuant to Penson v. Ohio
(1988), 488 U.S. 75, 109 S.Ct. 346, 102 L.Ed.2d 300, we concluded that one potential reversible error might exist, and we appointed new counsel to argue that error and any others counsel might find. The appeal is now before us on a supplemental brief filed for that purpose.
 {¶ 2} The potential error we identified involved a warrantless search of Defendant-Appellant's motel room that produced drugs and paraphernalia underlying the multiple offenses of which he was subsequently convicted. We questioned whether, in order to enter the room as they did, police officers had improperly created an exigency that justified their warrantless entry of the room. The issue has now been thoroughly briefed. We conclude that the warrantless entry was justified, though not by any exigent circumstance but by independent probable cause to arrest the Defendant made available to police by the plain view exception to the warrant requirement. Therefore, we find no reversible error on account of the warrantless entry and search of the room and the seizures that followed the search, and none with respect to several other assignments of error Defendant-Appellant presents. However, because his sentences were imposed in violation of the holding in State v. Foster,109 Ohio St.3d 1, 2006-Ohio-856, we will reverse and vacate the sentences the trial court imposed and remand the case for resentencing.
 {¶ 3} Defendant-Appellant Holloway was convicted upon guilty verdicts returned by a jury of multiple criminal offenses charged in two indictments that were consolidated for trial. In common pleas court Case No. 2004-CR-527, he was charged with and convicted of one count of trafficking in crack cocaine, R.C.2925.03(A)(2), one count of possession of crack cocaine, R.C.2925.11, and one count of possession of heroin, R.C. 2925.11. In common pleas court Case No. 2004-CR-586, he was charged with and convicted of one count of carrying concealed weapons, R.C.2923.12, one count of having weapons while under disability, R.C.2923.12(A)(3), one count of possession of heroin, R.C. 2925.11, and one count of possession of crack cocaine, R.C. 2925.11. The trial court sentenced Holloway to a total aggregate sentence of eleven years and three months on his multiple convictions. Defendant filed a timely notice of appeal.
 {¶ 4} The charges in Case No. 2004-CR-527 involved the search of Holloway's motel room that occurred on July 2, 2004. While conducting a "business check" at the Executive Inn Motel, two Springfield police officers detected a very strong odor of burning marijuana moving through the hotel complex. They traced it to an upper level, where they saw some burning incense in a hallway. One of the officers also heard what he believed to be the sound of an aerosol can being sprayed inside a room nearby.
 {¶ 5} The officers knocked on the door of the room. A male voice from inside asked: "Who is it?" One of the two officers, whose name is Tate, replied: "It's Tator. Open the door." The door was then opened slightly by Defendant Holloway, who appeared to take pains to conceal himself and the room's contents. While Officer Tate was asking Holloway about the odor of marijuana, the other officer, Sandy Fent, looking through the door opening, saw the butt end of a handgun sticking out of Holloway's pants pocket. The officers then entered the room to seize the gun and arrest Holloway. The officers also seized drugs and money they found in a search of Holloway's person incident to his arrest, as well as heroin, crack cocaine, guns, ammunition, and drug-related paraphernalia that were in the motel room.
 {¶ 6} The charges in Case No. 2004-CR-586, arose from a wholly separate event that occurred several weeks later, on July 22, 2004.[1] Springfield Police Officers Thomas Selner and Jason Via approached what they had been told by their dispatcher was a stolen vehicle, which was parked at a gas station lot. Defendant Holloway was in the front passenger seat. He was removed from the vehicle and arrested.
 {¶ 7} Defendant told the officers that he had a loaded gun in his waistband. Officers seized the gun and $1,245 in cash they found in a search of Holloway's person incident to his arrest. A search of the vehicle produced crack cocaine and heroin from inside the unlocked glovebox and a scale with narcotic residue inside the center console between the front seats.
 {¶ 8} Officers also arrested Defendant's female companion, who emerged from inside the gas station after she purchased several items. She explained that Defendant had driven the vehicle from Dayton to Springfield and intended to drive the vehicle back to Dayton after dropping her off at home, and that she had driven the vehicle to the gas station while Defendant rode as a passenger.
FIRST ASSIGNMENT OF ERROR
 {¶ 9} "APPELLANT'S CONSTITUTIONAL RIGHTS WERE VIOLATED WHEN THE POLICE OFFICERS ENTERED APPELLANT'S HOTEL ROOM WITHOUT A SEARCH WARRANT."
SECOND ASSIGNMENT OF ERROR
 {¶ 10} "APPELLANT RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL FROM HIS TRIAL ATTORNEY."
 {¶ 11} The Fourth Amendment to the Constitution of the United States provides:
 {¶ 12} "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."
 {¶ 13} Likewise, the Ohio Constitution, at Section 14, Article I, states:
 {¶ 14} "The right of the people to be secure in their persons, house, papers, and possessions, against unreasonable searches and seizures shall not be violated; and no warrant shall issue, but upon probable cause, supported by oath or affirmation, particularly describing the place to be searched, and the person and things to be seized."
 {¶ 15} The purpose of both the Federal and the Ohio provisions is to protect persons from unreasonable intrusions by governmental agents into homes and other areas, including hotel rooms, Hoffa v. United States (1966), 385 U.S. 293,87 S.Ct. 408, 17 L.Ed.2d 374, in which such persons have a reasonable expectation of privacy. To implement the protection, both provisions require a prior judicial warrant issued upon a showing of probable cause to believe that a search or seizure will produce evidence of criminal activity.
 {¶ 16} Searches and seizures conducted without a prior warrant are unreasonable per se, and therefore illegal, subject to several well-established exceptions to the warrant requirement. Katz v. United States (1967), 389 U.S. 347,88 S.Ct. 507, 19 L.Ed.2d 576. The State has the burden of proving that a warrantless search falls within one of those exceptions.State v. Tincher (1988), 47 Ohio App.3d 188. If the state fails to satisfy its burden, prohibition of the state's use of the evidence through an order of suppression is the proper remedy.Mapp v. Ohio (1961), 367 U.S. 643, 81 S.Ct. 1684,6 L.Ed.2d 1081.
 {¶ 17} A principal exception to the Fourth Amendment warrant requirement is a search incident to a person's arrest. Draper v.United States (1959), 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327. The rationale for the exception is that the right to conduct the search flows automatically from the arrest; consequently, the critical issue is the legality of the arrest. State v. Griffin
(1999), 133 Ohio App.3d 490. An arrest is legal if it is based on either a warrant for the person's arrest or probable cause to perform the arrest. Probable cause to arrest exists when a reasonably prudent person would believe that the person to be arrested has committed a crime. State v. Timson (1974),38 Ohio St.2d 122.
 {¶ 18} Another, less well-understood exception to the Fourth Amendment warrant requirement is the "exigent circumstances" exception. That exception permits officers to enter a place they would otherwise not be able to enter, absent consent or a prior judicial warrant, for the purpose of responding to an emergency. The emergency must be both actual and on-going, and must be such that the delay generally associated with obtaining a warrant would result in endangering police officers or others or would result in the loss or concealment of evidence. Katz, Ohio Arrest, Search and Seizure (2002 Ed.), Section 10.1.
 {¶ 19} The exigent circumstances exception does not implicate a probable cause standard. Officers need only have a reasonable basis to believe, from the totality of the circumstances before them, that an emergency exists from which some particular unwanted result may follow. State v. Morris (Nov. 29, 1989), Montgomery App. No. 10992. When that need is to protect evidence from concealment or destruction, however, the existence of that evidence on the premises does not, in and of itself, create an emergency, even where probable cause exists to believe it is there. Agnello v. United States (1925), 269 U.S. 20,46 S.Ct. 4, 70 L.Ed. 145. There must be some actual need to protect the evidence, demonstrated for example by overt efforts of persons inside that, if left undisturbed, portend destruction or concealment of the evidence.
 {¶ 20} The State's reliance on the exigent circumstance exception is subject to one further qualification. Officers may not act for the purpose of creating the necessary exigency. For example, officers may not "knock and announce" their presence as police officers in order to create a reason to believe that evidence will be destroyed by persons inside that would permit the officers to enter. State v. Jenkins (1995),104 Ohio App.3d 265. That bar applies whether officers merely suspect the evidence is there or have probable cause to believe that it is.Id.
 {¶ 21} In rejecting the prior Anders brief, we found that an arguable issue exists whether, in the present case, officers acted improperly to create an exigency that permitted them to enter Defendant's motel room, citing Jenkins and the decision of this court in State v. Sims (1998), 127 Ohio App.3d 603. Appellant's new counsel argues that officers improperly created the necessary exigency when they knocked on Defendant's door. Upon consideration, we find that no reversible error is portrayed. Before discussing our reasons for that finding, however, a further observation is necessary to put the question in its proper context.
 {¶ 22} Defendant's trial counsel filed no Crim.R. 12(C)(3) motion to suppress evidence police seized from his motel room. That failure would waive any error in the trial court's failure to suppress the evidence police seized when they entered Defendant's room. Therefore, the ultimate issue is whether counsel's failure to file a Crim.R. 12(C)(3) motion to suppress deprived Defendant of his Sixth Amendment right to the effective assistance of counsel.
 {¶ 23} Counsel's performance will not be deemed ineffective unless and until counsel's performance is proved to have fallen below an objective standard of reasonable representation and, in addition, prejudice arises from counsel's performance.Strickland v. Washington (1984), 466 U.S. 668, 104 S.Ct. 2052,80 L.Ed.2d 674. To show that a defendant has been prejudiced by counsel's deficient performance, the defendant must demonstrate that were it not for counsel's errors, the result of the trial would have been different. Id., State v. Bradley (1989),42 Ohio St.3d 136.
 {¶ 24} In the present case, the officers acted on a reasonable suspicion that there were drugs in Defendant's motel room when they knocked on his door. They were authorized to knock on the door to investigate their suspicions. In doing so, and unlike in Jenkins, the officers did not announce that they were police. When Defendant asked, "Who is it?", Officer Tate responded, "It's Tator. Open the door." Defendant then opened the door voluntarily, permitting the officers a very limited view of Defendant and his room. Nevertheless, the view they had permitted Officer Fent to see the butt end of a handgun sticking out of Defendant's pants pocket. That evidence, in plain view of the officers who were legally in a position to see it, was probable cause implicating Defendant in commission of a weapons offense that was sufficient to permit the officers to enter the room to arrest Defendant and to seize other evidence of criminal conduct that they found inside. State v. Blevins (Aug. 16, 1990), Cuyahoga App. No. 57231.
 {¶ 25} The officers did not enter Defendant's motel room to prevent the destruction or concealment of evidence, but to arrest Defendant for an offense which they had probable cause to believe he committed. We find no violation of Defendant's Fourth Amendment rights that would justify suppression of the evidence that police seized from Defendant's motel room. Therefore, his trial counsel was not ineffective because he failed to file a motion to suppress evidence. The first and second assignments of error are overruled.
THIRD ASSIGNMENT OF ERROR
 {¶ 26} "THERE WAS INSUFFICIENT EVIDENCE TO CONVICT APPELLANT OF TRAFFICKING AND DRUG ABUSE."
 {¶ 27} A sufficiency of the evidence argument challenges whether the State has presented adequate evidence on each element of the offense to allow the case to go to the jury or sustain the verdict as a matter of law. Thompkins, supra. The proper test to apply to such an inquiry is the one set forth in paragraph two of the syllabus of State v. Jenks (1991), 61 Ohio St.3d 259:
 {¶ 28} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."
 {¶ 29} Defendant does not argue that the State failed to prove any specific element of any of the drug offenses charged as a result of the search of his motel room on July 2, 2004. Rather, Defendant claims that the evidence was insufficient because it was seized in violation of his Fourth Amendment rights. However, we previously concluded in disposing of Defendant's first assignment of error that the warrantless entry into Appellant's motel room by police did not violate his Fourth Amendment rights. Therefore, the evidence police recovered as a result was properly admitted. Construing that evidence in a light most favorable to the State, a rational trier of facts could find that all of the elements of the drug offenses charged in Case No. 2004-CR-527 were proved beyond a reasonable doubt. Therefore, Defendant's conviction on the drug charges stemming from the July 2, 2004, motel room incident is supported by legally sufficient evidence.
 {¶ 30} With respect to the incident of July 22, 2004, and the drug possession charges stemming therefrom in Case No. 2004-CR-586, Defendant argues that evidence that he was seated in the front passenger seat of a stolen vehicle was insufficient to prove that he "knowingly possessed" the illegal drugs found by police in the closed but unlocked glove compartment.
 {¶ 31} "Possession" is defined in R.C. 2925.01(K):
 {¶ 32} "Possess or possession means having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found."
 {¶ 33} Possession of a drug may be either actual physical possession or constructive possession. State v. Butler (1989),42 Ohio St.3d 174. A person has constructive possession of an item when he is conscious of the presence of the object and able to exercise dominion and control over that item, even if it is not within his immediate physical possession. State v.Hankerson (1982), 70 Ohio St.2d 87; State v. Wolery (1976),46 Ohio St.2d 316.
 {¶ 34} The State's evidence, if believed, demonstrates that Defendant was seated in the front passenger seat of the vehicle, directly in front of the closed but unlocked glove compartment where the heroin and crack cocaine were discovered by police. Those drugs were in close proximity to Defendant and easily within his reach. Officer Selner testified concerning the statements made by Defendant's female companion, that Defendant had driven the car from Dayton to Springfield. That evidence permitted a finding that Defendant exercised dominion and control over the vehicle in which drugs were found.
 {¶ 35} In terms of "knowing possession," knowledge must be determined from all of the facts and circumstances surrounding the incident. State v. Williams (April 1, 2005), Montgomery App. No. 20271, 2005-Ohio-1597. The evidence presented by the State permits a reasonable inference that Appellant knowingly and constructively possessed the drugs and other evidence found in the vehicle's glove compartment and console. Viewing the evidence in a light most favorable to the State, as we must, a rational trier of facts could find that all of the elements of the drug possession charges in Case No. 2004-CR-586 were proved beyond a reasonable doubt. Defendant's conviction on the drug possession charges stemming from the July 22, 2004, stolen vehicle incident is therefore supported by legally sufficient evidence.
 {¶ 36} The third assignment of error is overruled.
FOURTH ASSIGNMENT OF ERROR
 {¶ 37} "THE JURY VERDICT SHOULD BE REVERSED BECAUSE IT WAS AGAINST THE MANIFEST WEIGHT OF EVIDENCE."
 {¶ 38} A weight of the evidence argument challenges the believability of the evidence and asks which of the competing inferences suggested by the evidence is more believable or persuasive. State v. Hufnagle (Sept. 6, 1996), Montgomery App. No. 15563, unreported. The proper test to apply to that inquiry is the one set forth in State v. Martin (1983),20 Ohio App.3d 172, 175:
 {¶ 39} "[t]he court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." Accord: State v. Thompkins,78 Ohio St.3d 380, 1997-Ohio-52.
 {¶ 40} The credibility of the witnesses and the weight to be given to their testimony is a matter for the trier of facts to resolve. State v. DeHass (1967), 10 Ohio St.2d 230. In Statev. Lawson (August 22, 1997), Montgomery App. No. 16288, we observed:
 {¶ 41} "[b]ecause the factfinder . . . has the opportunity to see and hear the witnesses, the cautious exercise of the discretionary power of a court of appeals to find that a judgment is against the manifest weight of the evidence requires that substantial deference be extended to the factfinder's determinations of credibility. The decision whether, and to what extent, to credit the testimony of particular witnesses is within the peculiar competence of the factfinder, who has seen and heard the witness." Id., at p. 4.
 {¶ 42} This court will not substitute its judgment for that of the trier of facts on the issue of witness credibility unless it is patently apparent that the trier of facts lost its way in arriving at its verdict. State v. Bradley (Oct. 24, 1997), Champaign App. No. 97-CA-03.
 {¶ 43} Defendant argues that with respect to his drug possession charges stemming from the stolen vehicle incident on July 22, 2004, the jury lost its way in concluding that he, rather than the female driver or the vehicle's true owner, possessed the drugs police discovered in the glove compartment. We disagree.
 {¶ 44} As we discussed in disposing of the previous assignment of error, the evidence presented by the State, if believed, permits a reasonable inference that Appellant knowingly and constructively possessed the drugs discovered in the glove compartment, given his close physical proximity to those drugs and the dominion and control he had exercised over the vehicle. Defendant offered no evidence on this issue. The jury did not lose its way merely because it chose to believe the State's witnesses, who were the only witnesses who testified concerning this issue.
 {¶ 45} In reviewing this record as a whole, we cannot say that the evidence weighs heavily against a conviction, that the jury lost its way, or that a manifest miscarriage of justice has occurred. Appellant's conviction is therefore not against the manifest weight of the evidence.
 {¶ 46} The fourth assignment of error is overruled.
FIFTH ASSIGNMENT OF ERROR
 {¶ 47} "THE TRIAL COURT VIOLATED APPELLANT'S SIXTH AMENDMENT RIGHT TO A JURY TRIAL BY MAKING A FACTUAL DETERMINATION TO IMPOSE A SENTENCE BEYOND THE STATUTORY MINIMUM."
 {¶ 48} Relying upon Blakely v. Washington (2004),542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403, and State v. Foster,109 Ohio St.3d 1, 2006-Ohio-856, Appellant argues that the consecutive sentences the trial court imposed and justified upon findings made by the court pursuant to R.C. 2929.14(E)(4) are unconstitutional because they require judicial fact finding that violates a defendant's Sixth Amendment right to jury trial on facts relied upon to enhance a sentence. We agree.
 {¶ 49} Foster declared R.C. 2929.14(E)(4) unconstitutional and severed that provision from the remainder of the sentencing statutes. Per Foster, trial courts now have full discretion to impose any sentence within the applicable statutory range and courts are no longer required to make findings or give their reasons for imposing maximum, consecutive, or more than minimum sentences. Foster, at ¶ 100; State v. Mathis,109 Ohio St.3d 54, 2006-Ohio-855. However, in any case where a sentence is imposed upon a finding made by the court pursuant to a statutory provision that Foster declared unconstitutional, reversal and remand for resentencing is required if the case was pending on direct review at the time Foster was decided. Id., at ¶ 104-106. That is the case here. Defendant's sentences will be reversed and the case remanded for resentencing in accordance with Foster.
 {¶ 50} The fifth assignment of error is sustained. Although Defendant's convictions will be affirmed, his sentences will be reversed and vacated and the case remanded for resentencing within the applicable statutory ranges established by R.C.2929.14(A)(2), (A)(3), (A)(4), and (A)(5), per Foster.
Fain, J. And Donovan, J., concur.
[1] Defendant Holloway had been released from jail following his arrest on July 2, 2004, due to jail overcrowding.